## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 4:10-cv-10041-KMM

EDWARD WILLIS, JR., *et al.*,

      Plaintiffs,

v.

NOVA CASUALTY COMPANY,

      Defendant.

_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Claimant Latham, Luna, Eden, and Beaudine, LLP's (the "Law Firm") Amended Motion to Enforce Charging Lien.  ("Mot.") (ECF No. 67). Plaintiffs John E.D. Grunow Jr. ("Grunow") and Harbor Course Properties, LLC ("HCP"), as successor in interest by merger to O.R. Golf Partners, Ltd., (collectively, the "Client"), filed a Response in Opposition to the Amended Motion.  ("Resp.") (ECF No. 69).  The Law Firm filed a reply.  ("Reply") (ECF No. 73).   The Court referred the Law Firm's original Motion to Enforce Charging Lien (ECF No. 60) to the Honorable Jacqueline Becerra, United States Magistrate Judge, "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and for a Report and Recommendation [.]"  (ECF No. 62).  Pursuant to the Court's referral, Magistrate Judge Becerra issued a Report and Recommendation recommending that Defendant's Motion be GRANTED IN PART and DENIED IN PART.  ("R&R") (ECF No. 101).  The Client filed Objections to the R&R, ("Objs.") (ECF No. 103), and the Law Firm filed a Response to the Client's Objections ("Objs. Resp.") (ECF No. 105).  The matter is now ripe for review.  As set forth below, the Court ADOPTS the R&R.

## I.        BACKGROUND

This case arises from the Law Firm's representation of the Client in a long-running litigation dating back over twenty (20) years. R&R at 2. The background of this case is detailed, at length, in the R&R and does not bear repeating here beyond the key facts relevant to the Law Firm's instant Motion. *See generally id*.

On April 12, 2010, the Client filed the instant bad faith action against Nova Casualty Company ("Nova") in state court, which was later removed to this Court. *Id*. at 3 (citing (ECF No. 1). In the R&R, Magistrate Judge Becerra described the procedural history of the case as follows:

> On July 7, 2010, the District Court entered an Order abating the case pending a final resolution of Nova's Declaratory Judgment Action in state court. (ECF No. 11). The Declaratory Judgment Action continued through July 11, 2016, when the state trial court determined that the Client was entitled to $1,633,753.12 in covered damages. (ECF No. 22) at 5–10. Thereafter, the Client filed its motion to lift the stay, which the District Court granted on April 16, 2019, (ECF No. 23).
>
> On March 4, 2020, two months before the case was set for trial, Nova and the Client attended a mediation where they reached a complete settlement of the Bad Faith Action before this Court. (ECF No. 53). After the settlement, a dispute arose between the Law Firm and the Client. (ECF No. 60) at 1–2. Specifically, on March 6, 2020, the Law Firm provided the Client its final invoice including time billed through February 28, 2020. (ECF No. 68-5) at 2–8. It also presented the Client with its calculation of the fees it had deferred and a premium to which it was entitled to in accordance with the terms of an agreement that the parties had reached in 2013. *Id*. at 9–11.
>
> On March 13, 2020, the Law Firm filed a Notice of Charging Lien. (ECF No. 55). Prior to the payment of the settlement proceeds, the Client and the Law Firm agreed to place the disputed funds into an escrow account, and the remaining settlement proceeds were disbursed directly to the Client. (ECF No. 68-5) at 22. On April 23, 2020, the Client sent a letter to the Law Firm stating the Law Firm was not entitled to payment. *Id*. at 69–85.

R&R at 3–4 (citations reformatted).

Now, in the instant Motion, the Law Firm seeks to enforce its charging lien. *Id.* at 4 (citing Mot.). "The Law Firm argues that it is 'entitled to the entry of a judgment as a matter of law enforcing its charging lien without an evidentiary hearing.'" *Id.* (citing Mot. at 10). Specifically, the Law Firm Argues that it has satisfied the elements to enforce the charging lien because:

> (1) there is a fee agreement that forms an express contract between the Law Firm and the Client; (2) the agreement expressly provides that payment would come from the settlement proceeds; (3) the Client has attempted to avoid such payment; and (4) the Law Firm gave the Client timely notice of the charging lien.

*Id.* (citing Mot. at 10). The Law Firm contends that it is entitled to $1,072,724.99.

## II.   LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

However, a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same

arguments and positions taken in the original papers submitted to the Magistrate Judge.  Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.").

When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 1:17-CV-24263-UU, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

With respect to a magistrate judge's credibility findings, "a district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings." *Amlong & Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230, 1250 (11th Cir. 2007). "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible only when there is an 'articulable basis for rejecting the magistrate's original resolution of credibility.'" *Id*. (citing *United States. v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)) (emphasis in original removed).

## III.   DISCUSSION

Magistrate Judge Becerra held two evidentiary hearings in this matter, the first on May 28, 2021 and the second on June 4, 2021.  (ECF Nos. 86, 88).  In the R&R, Magistrate Judge Becerra recommends that the Law Firm's Motion be GRANTED IN PART and DENIED IN PART.  *See generally* R&R.  Magistrate Judge Becerra's findings, the Client's Objections, and the Law Firm's response to the Client's Objections, are discussed below.

**A.  Magistrate Judge Becerra's Recommendation.**

First, Magistrate Judge Becerra found that a 2013 fee agreement ("Fee Agreement"), entered into by the Law Firm and the Client, is a valid contract.  R&R at 6–8.  Magistrate Judge Becerra noted that in 2012, after the Client "stopped making payments to the Law Firm" due to "concerns regarding its cash flow . . . , the Client approached the Law Firm about the possibility of entering into a revised fee agreement." *Id.* at 6 (citations omitted).  Mr. Fajt, a managing partner of HCP, reached out on behalf of the Client to Ms. Eden, the partner at the Law Firm that had the primary responsibility over the Client's matter.  *Id*. at 5–6.  Mr. Fajt, who has a law degree from Columbia University School of law, proposed a "partial contingency" under which the Law Firm would

> apply a discount of 50% to the fees at the rates reflected in the budget [the Law Firm provided].  The amount of the discount would be carried forward and one half of that discount would be paid from the first proceeds of any collection or settlement up to the policy limitation of $1 million.  The balance of the discount (i.e., 25% of the amounts billed) would be paid from the first proceeds on any collection or settlement above the $1 million policy limit.  In addition, [the Law Firm] would receive a premium of 100% of this remaining discount.

*Id*. at 6 (citing (ECF No. 90-1) at 8).  After further negotiations, the Parties executed the Fee Agreement, the key terms of which are not in dispute and are provided below:

> (1) Ms. Eden's hourly rate would be discounted from $450.00 to $285.00, and Cristina Taylor's ("Ms. Taylor") hourly rate would be discounted from $285.00 to $235.00 ("Discounted Rates").
>
> (2) For the first $1 million recovered by the Law Firm, the Client was to pay the Law Firm one-half of the difference between the discounted rate and the regular rates of Ms. Eden ($82.50) and Ms. Taylor ($25.00).
>
> (3) For any recovery over $1 million, the Client was to pay the remaining one-half of the deferred fees ($82.50 for Ms. Eden and $25.00 for Ms. Taylor) (the "Deferred Fees").

(4) If the recovery was over $1 million, the Client would pay a premium which amounted to 100% of the Deferred Fees (i.e., an additional $82.50 for Ms. Eden and $25.00 for Ms. Taylor) (the "Premium Fees").

(5) The Client was to pay the Law Firm's monthly invoices within thirty days of receipt.

(6) If the Client had any questions or issues regarding an invoice, the Client was to pay the portion of the invoice, if any, that was undisputed, and advise the Law Firm of its concerns with the disputed amounts within thirty days.

(7) If the Client failed to pay any undisputed monthly invoice within the thirty days, the regular hourly billing rates for Ms. Eden and Ms. Taylor would be reinstated and neither the Deferred Fees nor the Premium Fee provisions of the Fee Agreement would apply to any future bills.

(8) The Law Firm was to do its "very best" to manage the costs within the budget and was to advise the Client if there was a need for any meaningful departures from the budget. The Client would assume the case was on budget unless the Law Firm advised otherwise.

(9) If the Law Firm advised that a cost or task might take the matter above the budget in a "meaningful way," the Client would decide whether to incur the additional costs. If the Client agreed, the budget would be effectively modified to that extent. If the Law Firm failed to advise the Client in advance of a "meaningful" departure from the budget, the amount of the bill that exceeds the budget would have to "be discussed" and the parties would "have to mutually agree on an equitable resolution of such excess." In the event of any such dispute, the Fee Agreement would remain in place until the parties reached a resolution.

*Id*. at 8 (internal citations omitted). Magistrate Judge Becerra found that the enforcement of the Fee Agreement is governed by Florida contract law. *Id*. at 10–11.

Second, Magistrate Judge Becerra found that the Client made timely payments under the Fee Agreement until after the settlement was reached and the Law Firm demanded the deferred and premium fees under the Fee Agreement. *Id*. at 8. The last invoice sent to the Client included a demand for the deferred and premium fees, an amount totaling to $967,962.00. *Id*. at 9. However,

[o]n April 23, 2020, Mr. Fajt sent a letter to Ms. Eden objecting to the Law Firm's demand for its Deferred and Premium Fees, as well as to the reasonableness of the

6

attorneys' fees, the duplication of one of the invoices, and the addition of Mr. Marc Levine, a partner at the Law Firm, to the trial team.  (ECF No. 68-5) at 69–74.  On May 28, 2020, Ms. Eden responded to Mr. Fajt, agreeing to a downward adjustment of $48,438.00 based on a duplicative invoice, an adjustment of Ms. Taylor's hours and an update to the discount on Mr. Levine's hourly rate.  *Id*. at 86.  As such, the total demand as to the Deferred and Premium Fees was reduced from $967,962.00 to $919,524.00.  *Id*.; *see* (ECF No. 90-1) at 25.  The Law Firm claims that the Client owes the March 2020 invoice, the Deferred Fees, and the Premium Fees, totaling $1,072,724.99.  (ECF No. 68-5) at 86.

R&R at 8 (internal citations reformatted).

Third, Magistrate Judge Becerra found that the Law Firm did not breach the Fee Agreement by failing to adhere to two budgets that were included in the Fee Agreement: (1) the "2013 Damages Action Budget," and (2) the "2019 Bad Faith Action Budget"—which modified a related budget that was assembled in 2013.  *Id*. at 11.  Although there is no dispute that the Law Firm's fees, in total, exceeded the amounts included in these two budgets—Magistrate Judge Becerra nonetheless concluded that the Law Firm still generally complied with the terms of the Fee Agreement.  *Id*. at 11–24.

With respect to the "2013 Damages Action Budget," Magistrate Judge Becerra found that the Law Firm did not impermissibly exceed the budget for the following reasons: (1) Ms. Eden testified that the budget was only a rough estimate of where she saw the case going, (2) the Client agreed to any work that was in excess of or outside the budget by paying the invoices without raising a timely objection to these amounts, (3) Magistrate Judge Becerra specifically relied on Ms. Eden's "credible" testimony "that [Ms. Eden] followed the procedure set forth by the Fee Agreement and advised the Client regarding departures from the budget," (4) "Ms. Eden specifically stated that the Client was advised that the Law Firm's billing for categories captured in the budget were going to cost more than what was anticipated," (5) the Client was aware of the work performed even before invoices were received because "Ms. Eden testified that she would

have weekly, sometimes daily, communications with the Client regarding the work that the Law Firm was performing," (6) "the billing records also amply support [Ms. Eden's] testimony that she was in regular contact with the Client regarding the case," and (7) there is ample evidence in the record supporting Ms. Eden's testimony that the Client discussed and approved work that was performed outside the budget. *Id*. at 15–16 (citations omitted).  Moreover, in any event, Magistrate Judge Becerra found, based in part on the Client's testimony, that all of the invoices except the final one were reviewed and approved by the Client without any dispute. *Id*. at 16.  At one point in 2016, Mr. Fajt raised an issue regarding why the case was going over budget and following an explanation from the Law Firm, never brought it up again. *Id*. at 17.  Magistrate Judge Becerra also found that because the Fee Agreement required objections to monthly bills within 30 days, the Client's failure to timely raise objections constitutes a waiver and is "fatal" to any untimely objection, such as here. *Id*. at 18 (citing *Franklin & Marbin, P.A. v. Mascola*, 711 So. 2d at 52 (Fla. Dist. Ct. App. 1998), *as corrected* (May 13, 1998) (concluding that a client's failure to comply with a fee agreement's terms requiring objections within a fixed time constitutes a waiver of objections).

With respect to the "2019 Bad Faith Action Budget," Magistrate Judge Becerra found that the Law Firm did not impermissibly exceed the budget for the following reasons: (1) the budget consisted of "very rough calculations over various categories," (2) the Client did not seek greater detail in the 2019 Bad Faith Action Budget, even though it was aware the Law Firm had exceeded the 2013 Damages Action Budget, (3) although the Law Firm billed more hours than planned under the 2019 Bad Faith Action Budget, the total amount billed was reduced and therefore within the confines of the budget, (4) Ms. Eden did not seek approval of any items outside the budget because, due to the discounted rates, the Law Firm was never over the 2019 Bad Faith Action Budget, (5)

Ms. Eden testified that the Client was aware of the time being spent on the matter, and raised no objections and paid invoices on time, (6) during the course of the Law Firm's representation of the Client, the Law Firm indicated to the Client that the case was within the 2019 Bad Faith Action Budget, (7) the Law Firm's use of discounted rates in determining whether it was within the 2019 Bad Faith Action Budget was the most reasonable interpretation of the budget and, therefore, the Law Firm's work did not exceed the budget, (8) Ms. Eden testified that the discounted rates were used to determine whether they were within the budget because she assumed that the Client was most concerned about how much money it needed to have on hand to pay monthly invoices, and (9) the Law Firm did not breach any of its obligations under the Fee Agreement by failing to advise the Client of work outside the budget because there was no meaningful departure from the amounts that were billed to the Client. *Id*. at 18–23. Additionally, in any event, Magistrate Judge Becerra credited Ms. Eden's testimony that the Client was aware of and approved any work performed with respect to the Bad Faith Action—"constituting a modification of the budget as contemplated by the Fee Agreement itself." *Id*. at 23. Magistrate Judge Becerra's review of the invoices also supports that the Client was aware of any work conducted outside the budget. *Id*. (citations omitted). Finally, with respect to the Client's objection to the final invoice, Magistrate Judge Becerra found that the Client waived its right to object to the final invoice because its objection was raised 30 days after receipt of the invoice. *Id*. at 24.

Fourth, Magistrate Judge Becerra found that the Client's contention that the Law Firm's invoices were unreasonable is without merit and, in any event, the Client has waived its right to raise this argument. *Id*. at 24. Here, the fee award is governed by a charging lien, which is "a matter of contract such that an attorney is not required to establish the reasonableness of the fee requested." *Id*. at 25 (citing *Rodriguez v. Altomare*, 261 So.3d 590, 592 (Fla. Dist. Ct. App. 2018)

(holding that a charging lien is based on the agreement between the parties and not an amount the court finds to be reasonable) (citing *Gossett & Gossett, P.A. v. Mervolion*, 941 So. 2d 1207, 1209 (Fla. Dist. Ct. App. 2006)); (other citations omitted)).  Thus, Magistrate Judge Becerra concluded that, "the Client presented no case law to support its position that the Court can review the 'reasonableness' of the attorneys' fee when there has been an agreement between the parties as to the amount to be paid, and as here, the matter has progressed to the discharge of a lien.  As such, the reasonableness of the attorneys' fees is not the issue before this Court."  *Id*. at 25–26. Moreover, even if the issue of reasonableness were properly before the Court, the Client waived its right to object to these fees because: (1) the hours worked and amounts charged were easily ascertainable from the invoices, and (2) the Client did not raise its objection in a timely manner. *Id*. at 26–27.  Magistrate Judge Becerra also found that the Law Firm was not required to provide a running total of any deferred amounts and the Client was well aware of how the Fee Agreement worked because it was the one who proposed this structure.  *Id*. at 27–28.  Magistrate Judge Becerra found Mr. Fajt's testimony that he believed he could challenge these bills at a later time not to be credible because he is "a sophisticated professional and a lawyer by training" who reviewed the bills on a monthly basis.  *Id*. at 28.  Lastly, Magistrate Judge Becerra found the Client's argument that the Fee Agreement is unenforceable to be meritless because (1) the Client is sophisticated, (2) the Client initiated negotiations for the modifications to the Fee Agreement, and (3) there was "was simply no overreaching, unconscionable conduct, misrepresentation, or fraud."  *Id*. at 29–30.  In sum, Magistrate Judge Becerra concluded:

> Indeed, based on the undersigned's review of the record, and with the benefit of the testimony from Mr. Fajt and Ms. Eden, there can be no credible argument that the Client was unaware of the impact of the Fee Agreement, the merits of its case, the work the Law Firm was doing, the details of the invoices, or quite frankly, any other issue of relevance to this matter.  Not only was the Client intimately involved in the case, Mr. Fajt was reviewing every invoice before payment.  Indeed, this is not a

case where the invoices were being paid by an office manager or an accounting department without any benefit of review. Mr. Fajt, and to some extent Mr. Grunow, were not only involved in every aspect of the case, but they also managed the case from a financial perspective as well. Indeed, they reaped the benefits of the Fee Agreement, by not paying a significant portion of their legal fees for almost seven years, and now want to deprive the Law Firm of its fee and the Premium it contracted for in return for waiting this long for its payment. There is no reason to allow the Client to do so.

*Id*. at 30.

Fifth, Magistrate Judge Becerra sustained the Client's objections to Deferred and Premium Fees for work conducted by Marc Levine, because his work was not provided for in the Fee Agreement. *Id*. at 31.

Sixth, Magistrate Judge Becerra found the Client's argument that it did not have notice of apportionment issues to be irrelevant and entirely unpersuasive. *Id*. at 32.

For these reasons, Magistrate Judge Becerra recommends that the Law Firm's Amended Motion (ECF No. 67) be GRANTED IN PART and DENIED IN PART, and that the Law Firm is entitled to $1,012,649.99, an amount which includes prejudgment interest. *Id*. at 33.

**B.  The Court Finds That Each of the Client's Objections to the R&R Are Without Merit.**

The Client has raised several objections to Magistrate Judge Becerra's recommendation. *See generally* Objs. The Law Firm has responded to each of these objections and contends that Magistrate Judge Becerra's findings are correct. *See generally* Objs. Resp. The Court considers each of the Client's objections, and the Law Firm's responses, below.

**1.  The Client's Objections to Magistrate Judge Becerra's Finding That the Law Firm Did Not Exceed the 2019 Bad Faith Action Budget Are without Merit.**

The Client argues that Magistrate Judge Becerra incorrectly concluded that the Law Firm did not exceed the 2019 Bad Faith Action Budget because she (1) failed to consider that the Law Firm exceeded the budgeted hours, rather than the budgeted amount, (2) wrongly used the

discounted hourly rates, rather than the full hourly rates, to determine that the Law Firm did not exceed its budget, and (3) incorrectly compared the Law Firm's billing through the March 6, 2020 mediation with the maximum number of hours that would have been expended through trial.  Objs. at 2–3, 5–12.

In response, the Law Firm argues that Magistrate Judge Becerra correctly concluded that the Law Firm did not exceed the 2019 Bad Faith Action Budget, based on hours, because: (1) Magistrate Judge Becerra correctly considered the total number of hours billed by the Law Firm, (2) Magistrate Judge Becerra credited the testimony of Ms. Eden in determining that any work approved outside the budget was approved by the Client, and (3) the Client has provided no evidence showing that the Client raised an objection to any of the work performed by the Law Firm or that the work was not approved by the Client in accordance with the terms of the Fee Agreement.  Objs. Resp. at 4.  Additionally, the Law Firm argues that the discounted rates were the appropriate measure to determine if the Law Firm was operating within the 2019 Bad Faith Action Budget based on evidence showing that the Client would have used the discounted rates to determine how much money it would need to devote to legal fees and because the Client was aware that the fees under the 2019 Bad Faith Action Budget and the Deferred Fees were two separate things.  *Id*. at 7–8.  The Law Firm also argues that Magistrate Judge Becerra appropriately compared the breakdown of the invoiced fees by category to the estimated fees for each category in the 2019 Bad Faith Action Budget and, in any event, the Client has not identified any evidence refuting the evidence presented by the Law Firm as to the number of hours performed within each category of the 2019 Bad Faith Action Budget.  *Id*. at 8–9.

The Court considers these arguments in turn.

### a. *Magistrate Judge Becerra Did Not Err by Considering the Budgeted Amount versus the Budgeted Hours.*

To begin, in its first objection regarding the 2019 Bad Faith Action Budget, regarding budgeted hours versus the budgeted amount, the Client has not provided a single citation to the R&R and the Court finds that its calculations are not adequately supported by citations to the record. Objs. at 5–6. Accordingly, the Court finds that this is not a "proper, specific" objection to a factual finding contained within the R&R. *Macort*, 208 F. App'x at 784. In the absence of clear error, which the Court does not find on this issue, this objection is easily disposed of. *Keaton*, 2015 WL 12780912, at *1.

Moreover, in any event, the Client's contention that Magistrate Judge Becerra should find that the Law Firm exceeded the 2019 Bad Faith Action Budget based on the total number of hours fails to appreciate that a substantial portion of these hours were *outside* the budget and were *approved* by the Client. Thus, the Court finds that Magistrate Judge Becerra did not err by failing to sum these two numbers together and by comparing them to the 2019 Bad Faith Action Budget. To the contrary, Magistrate Judge Becerra considered the work conducted outside the budget and found that the Client both had knowledge of this work and approved it. R&R at 23. Specifically, Magistrate Judge Becerra "credit[ed] the testimony of Ms. Eden and found that any work performed with respect to the Bad Faith Action was approved by the Client, constituting a modification of the budget as contemplated by the Fee Agreement itself." *Id.* For these reasons, the Court finds the Client's objection based on the total number of hours to be without merit.

### b. *Magistrate Judge Becerra's Reliance On Discounted Fees to Determine Whether the Law Firm Was within the Budget Was Correct.*

Next, the Client has not provided an articulable basis for rejecting Magistrate Judge Becerra's reliance on discounted fees to assess whether the Law Firm was within the 2019 Bad

Faith Action Budget—which was based in part upon a credibility determination with respect to Ms. Eden's testimony.  R&R at 22.  Thus, the Court places great weight on Magistrate Judge Becerra's findings because they are based upon a credibility determination with respect to Ms. Eden's testimony that is not adequately rebutted by the Client.  *Amlong*, 500 F.3d at 1250 ("[A] district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings.").

The Court agrees with Magistrate Judge Becerra's finding "that the Law Firm's use of the discounted rates in determining whether it was within the 2019 Bad Faith Action Budget is the most reasonable interpretation of the 2019 Bad Faith Action Budget, and therefore, the Law Firm's work did not exceed that budget."  R&R at 22.  "Indeed, calculating the budget on the actual hourly rate of the lawyers, as opposed to the discounted rate, would make little sense because the actual rate was not being paid by the Client."  *Id.*  As pointed out by the Law Firm, this is consistent with Mr. Fajt's testimony that the budget "was to give us a guide as to what monies we should be expecting to spend."  (ECF No. 93) at 25:23–24.  To the extent the Client seeks to construe its obligations in the form of Deferred Fees as being "over budget," the Court agrees with Magistrate Judge Becerra's finding that "[t]he Client was well aware of how the Fee Agreement worked, and how the Deferred and Premium Fees might impact their recovery."  R&R at 27.  Thus, the Court finds that the Client's objection as to Magistrate Judge Becerra's reliance on discounted rates is without merit.

        *c.*   **The Client's Objection that Magistrate Judge Becerra's Analysis Failed to Account for Aspects of the Budget Which Were Ultimately Not Needed, Such as for Trial, Is without Merit.**

The Client's objection that Magistrate Judge Becerra improperly accounted for billing through mediation against the entire budget is plainly refuted by the chart in the R&R that compares each category of billing to the budget on a line-by-line basis. R&R at 19–20. Many of the line items relating to trial reflect that no time was billed on many trial-related issues. *Id*. The Client has not provided any evidence undermining Magistrate Judge Becerra's assessment of each category. *See generally* Objs. Thus, the Court finds this argument to be without merit.

        **2.**   **The Law Firm Did Not Need to Comply with The Procedure for Modifying the 2019 Bad Faith Action Budget Because It Did Not Exceed It.**

The Client argues that Magistrate Judge Becerra erred with respect to her finding that the Law Firm did not need to comply with the Fee Agreement's specific procedure for modifying the 2019 Bad Faith Action Budget. Objs. at 3, 12–13. The Client contends that this procedure should have been, but was not, followed by the Law Firm. *Id*.

In response, the Law Firm argues that the evidence establishes that the Client approved all the work performed by the Law Firm that was not within the 2019 Bad Faith Action Budget because: (1) the Client does not identify any work that was performed without its knowledge and approval, (2) the Client does not present any evidence to contradict the Law Firm's voluminous evidence documenting the Client's knowledge and approval of work conducted outside the 2019 Bad Faith Action Budget, and (3) the Client provides no evidence to contradict the testimony of Ms. Eden, which Magistrate Judge Becerra found credible. *Id*. at 10–16.

To begin, because the Law Firm did not exceed the 2019 Bad Faith Action Budget, it follows that there would have been no need for the Law Firm to request a modification of the

budget.  Thus, the premise of the Client's objection is rendered moot by the Court's findings above.

Regardless, the Court finds that the Client was aware of and approved any work that was conducted

by the Law Firm because the Client has not provided any evidence contradicting Ms. Eden's

testimony, which Magistrate Judge Becerra found to be credible on the issue of the Client's

knowledge and approval of the Law Firm's work.  R&R at 15–16, 23; *see Amlong*, 500 F.3d at

1250 ("[A] district court may not override essential, demeanor-intensive fact finding by a

magistrate judge without hearing the evidence itself or citing an exceptional justification for

discarding the magistrate judge's findings.").  For these reasons, the Court finds this objection to

be without merit.

### 3. The Client's Objection to Magistrate Judge Becerra's Finding That the Client Waived Its Right to Object to the Law Firm's Fees Is without Merit.

Third, the Client contends that Magistrate Judge Becerra erred in interpreting the Fee

Agreement to require objections within 30 days and in finding that the Client waived its objections

in the Bad Faith Action by failing to raise them within 30 days.  Objs. at 14–16.  Relatedly, the

Client contends that the March 6, 2020 invoice was actually objected to within 30 days.  *Id*. at 15.

In response, the Law Firm argues that Magistrate Judge Becerra correctly determined that

the Client waived its right to object to the invoices when it failed to object within 30 days based

on the plain terms of the Fee Agreement—which is enforceable under Florida law.  Objs. Resp. at

17.  Additionally, the Law Firm argues that the Client's reliance on Mr. Fajt's testimony for the

proposition that the 30-day objection period under the Fee Agreement was not intended to impose

an obligation on the Client to object within 30 days to be contrary to the express language of the

Fee Agreement—which was drafted by Mr. Fajt.  *Id*. at 18.  Moreover, the Law Firm argues that

Magistrate Judge Becerra considered Mr. Fajt's testimony on this issue and found that it was *not* credible. *Id*. (citing R&R at 28).

To begin, the entirety of the Client's objection as to Magistrate Judge Becerra's finding that the Client waived its right to object is devoid of even a single citation to the R&R. Objs. at 14–16. Moreover, the Client's objection is confusing because the heading for this section states: "the Magistrate Judge Incorrectly Concluded That the Client Waived Objections to the [Law] Firm's Invoices ***in the Bad Faith Case***." *Id*. at 14 (emphasis added). Then, in the next sentence, the Client states that it objects to "the Magistrate's finding that it waived any objections to the [Law] Firm's fees billed ***in any case*** by paying the invoices and failing to object to those invoices within 30 day[.]" *Id*. (emphasis added). To make matters even more confusing, the next sentence says "[i]n so concluding, the Magistrate determined that ***the 2013 Agreement*** required the Client to object to the [Law] Firm's invoices within 30 days or any objections thereafter would be waived." *Id*. (emphasis added). Thus, it is not clear to the Court if the Client is objecting to Magistrate Judge Becerra's findings of waiver with respect to the Bad Faith Action, the Damages Action, or both. Moreover, it is unclear to the Court if the reference to the "2013 Agreement" is a reference to the 2013 Damages Action Budget or the Fee Agreement. In light of the Client's unspecific scattershot objection, the Court need only satisfy itself that Magistrate Judge Becerra's finding with respect to waiver was not clear error. *Keaton*, 2015 WL 12780912, at *1 (citing *Johnson v. City Univ. of New York*, No. 00-cv-4964, 2003 WL 21435469, at *1 (S.D.N.Y. June 19, 2003) ("Where a party makes only conclusory or general objections, the court reviews the report and recommendation for clear error." (internal quotation marks and citations omitted)). The Court concludes that Magistrate Judge Becerra's finding with respect to waiver does not rise to clear error because the Fee Agreement clearly establishes a 30-day window for the Client to raise

objections. R&R at 17–18 (citing (ECF No. 68-2) at 38; *Franklin*, 711 So. 2d at 52 (concluding that a client's failure to comply with a fee agreement's terms requiring objections within a fixed time results in a waiver of objections)).[1]

Moreover, the Client's attempt to object to Magistrate Judge Becerra's finding based on Mr. Fajt's testimony is not persuasive because Magistrate Judge Becerra specifically found that "Mr. Fajt's testimony that he believed that he would still be able to object to the bills was simply not credible." *Id.* at 28. Magistrate Judge Becerra continued:

> Mr. Fajt, who is a sophisticated professional and a lawyer by training, testified that he reviewed the bills on a monthly basis . . . His testimony now that he did not pay close attention to them and just assumed that he could challenge them later is not credible given that he was the one that proposed the procedures for challenging the invoices in the first place. . . . If the bills were unreasonable, the Client had the opportunity, the ability, and the information necessary to challenge them within the time frame that it set out under the Fee Agreement.

R&R at 28 (internal citations omitted). The Client has not provided the Court with any evidence upon which the Court could reject Magistrate Judge Becerra's credibility determination with respect to Mr. Fajt and the Court agrees with Magistrate Judge Becerra's bases for finding Mr. Fajt's testimony to lack credibility. *Amlong*, 500 F.3d at 1250.

With respect to the Client's contention that it objected to the March 6, 2020 invoice merely because it did not pay that invoice, Objs. at 15, the Client has provided no evidence to contradict Magistrate Judge Becerra's finding that the Client did not object until April 23, 2020. R&R at 24 (citing (ECF No. 68–5) at 69–74). The Client cites to no evidence in its Objections that merely not paying an invoice constitutes an objection under the Fee Agreement. *See generally* Objs. To

---

[1] Magistrate Judge Becerra cites to an email from Mr. Fajt which states: "We shall pay your bills within 30 days. If we have any questions or issues with your bill we will pay the undisputed amount and advise you within 30 days of any issues we have."). R&R at 17–18 (citing (ECF No. 68-2) at 38.

the contrary, the evidence relied on by both the Client and Magistrate Judge Becerra shows that the Client was required to raise objections within 30 days.  *See* (ECF No. 68-2) at 38 (email from Mr. Fajt to Ms. Eden: "We shall pay your bills within 30 days.  If we have any questions or issues with your bill we will pay the undisputed amount and advise you within 30 days of any issues we have."); Objs. at 14 (90-1 at 5) (same).[2]

For these reasons, the Court finds that the Client's objections relating to Magistrate Judge Becerra's finding that the Client waived its right to object to be without merit.

### 4.     The Client's Objection Premised upon the Reasonability of the Law Firm's Fees Is without Merit.

The Client argues that Magistrate Judge Becerra erred in concluding that the Client could not challenge, and the Court could not review, the reasonableness of the Law Firm's fees due to the existence of the Fee Agreement.  Objs. at 16–18.  The Client seeks to distinguish the cases relied upon by Magistrate Judge Becerra, including *Rodriguez* and *Gossett*.  *Id*.  Additionally, the Client asserts that Magistrate Judge Becerra should have reviewed whether the Law Firm violated Florida Rule of Professional Conduct 4-1.5.  *Id*. at 17.

In response, the Law Firm argues that it is not required to establish reasonableness of the amounts due under the Fee Agreement because" [a] charging lien is contractual in nature and is to be based upon the amount agreed with the client, not an amount to be determined by the trial court."  Objs. Resp. at 18 (citing *Gossett*, 941 So. 2d at 1209).

---

[2]   Had the Client properly raised these concerns during the course of the litigation, as was envisioned in the Fee Agreement, the Client would have been required to: (1) pay any undisputed amount and (2) advise the Law Firm of any objections.  (ECF No. 68-2) at 38.  Thus, the Client's failure to raise objections in a timely fashion deprived the Law Firm of the opportunity to resolve these issues in the manner that was agreed to by the Parties.  The Client's dilatory objection, which was raised after it had obtained a substantial settlement, raises an interference of unwarranted gamesmanship as to its obligations under the Fee Agreement.

To begin, the Court finds the Client's attempt to distinguish *Gossett,* on grounds that the client in that case did not object to the fees, to be unconvincing.  Objs. at 16 (citing *Gossett*, 941 So. 2d at 1209).  The case is quite clear in saying that "[a] charging lien is contractual in nature and is to be based upon the amount agreed with the client, not an amount to be determined by the trial court." *Gossett*, 941 So. 2d at 1209.  Further, as noted by Magistrate Judge Becerra, "the Client presented no case law to support its position that the Court can review the 'reasonableness' of the attorneys' fee when there has been an agreement between the parties as to the amount to be paid, and as here, the matter has progressed to the discharge of a lien."  R&R at 25–26.  Here, again, the Client has failed to provide the Court with a single case in which a court has assessed the reasonableness of an attorneys' fee pursuant to an agreement between the parties, under circumstances similar to this case.  *See* Objs. at 16–18.

Moreover, the Client's challenge of the reasonableness of the Law Firm's fees under Florida Rule of Professional Conduct 4-1.5 ("Rule 4-1.5") is similarly without merit.  Rule 4-1.5 provides:

> Contracts or agreements for attorney's fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.

R. Reg. Fla. Bar 4-1.5(d).  As noted by Magistrate Judge Becerra, it was Mr. Fajt, who is a sophisticated businessman with a legal background, that initiated negotiations regarding the Fee Agreement and "[a]s such, the Client cannot now claim that the premium he negotiated is egregious."  R&R at 29–30.  Moreover, the Client's objection points to no evidence that would disturb Magistrate Judge Becerra's finding that "the record here does not support a finding that the

20

fee requested is clearly excessive because there was simply no overreaching, unconscionable conduct, misrepresentation, or fraud." *Id.* at 30.

For these reasons, the Court finds the Client's objections based upon reasonability of the Law Firm's fees to be without merit.

> **5.      The Client's Objection Regarding Magistrate Judge Becerra's Decision Not to Consider Certain Evidence at the Evidentiary Hearing Is Meritless.**

Fifth, the Client argues that Magistrate Judge Becerra improperly included findings and commentary pertaining to an issue raised in the Client's papers, but which Magistrate Judge Becerra had ruled would not be heard or adjudicated at the evidentiary hearing—thus resulting in no evidence on this issue being presented and a denial of due process.  Objs. at 3–4, 18–20. Specifically, the Client argues that it was an error for Magistrate Judge Becerra to refuse to hear evidence at the evidentiary hearing on the issue of whether the Law Firm made ill-advised legal arguments in the underlying litigation relating to apportionment—a legal concept in insurance law that is not necessary to explore here.  *Id*. at 18–20.

In response, the Law Firm contends that the Client's argument with respect to the apportionment issue is baseless.  Objs. Resp. at 19.  The Law Firm argues that Magistrate Judge Becerra never said that she would not make a recommendation on this argument, only that she would not hear evidence on it at the hearing.  *Id.*

In the R&R, Magistrate Judge Becerra rejected the Client's argument that the Law Firm took ill-advised legal positions as a basis for challenging the Law Firm's entitlement to fees owed under the Fee Agreement.  R&R at 32.  More specifically, Magistrate Judge Becerra found that:

> [t]he Client's argument that the Court review the appropriateness of certain legal positions taken, or not, in a state court insurance action is nothing more than another attempt at having the Court determine the "reasonable fee" as opposed to whether the Fee Agreement was breached and whether the resulting lien is enforceable.  The

Court declines to review this issue any further. The record is replete with evidence that the Client supervised this case with excruciating attention to detail, was highly sophisticated and sufficiently informed as to appreciate the significance of every step the Law Firm took in this case, and in fact, approved the Law Firm's work on a monthly basis. Indeed, there is no evidence that the Law Firm ever took a position, or made an argument, without consultation and approval from the Client. The Client's argument in this regard, as with almost all the others presented, appears to be based solely on its desire to avoid paying the amounts it not only agreed to pay, but that it proposed to pay when it offered the Law Firm a modified contingency in the first place. As a result of the Fee Agreement, the Client enjoyed seven years of reduced rates in excess of half a million dollars. That was a benefit that the Client enjoyed at a significant risk to the Law Firm. Given the sizeable nature of the settlement, the Law Firm is not only entitled to be paid for the hours that it worked and that were approved, but it also has a claim to the Premium Fees that the Client offered in return for only paying a reduced hourly rate for seven years.

*Id*. at 32–33.

Evidentiary hearings are not required for every fee dispute. The Eleventh Circuit has explained:

Occasionally, evidentiary hearings are necessary. In *King v. McCord*, 621 F.2d 205 (5th Cir. 1980) (*King v. McCord I*), this court's predecessor held that where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact, it was an abuse of discretion to make an award without holding an evidentiary hearing.

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Here, the Client has not provided the Court with any basis for finding that an evidentiary hearing was necessary on this issue. Objs. at 18–20. The Client points to no issue of fact or aspect of the record that was not clear. *Id*. Thus, there are no grounds upon which the Court can find that an evidentiary hearing was necessary in the first place. *Norman*, 836 F.2d at 1303 ("[N]o additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account."). The Court agrees with Magistrate Judge Becerra's conclusion on this issue, which is actually supported by evidence.

To the extent the Client might argue that it has not presented evidence on this point because it was foreclosed the opportunity to present evidence before Magistrate Judge Becerra at the hearing, the Court does not find this to be a concern because: (1) the Client could have presented evidence in its filings before Magistrate Judge Becerra, and (2) the Client could have presented evidence along with its Objections. Indeed, the Client should have, but did not, file this information both during the proceedings before Judge Becerra and here. *See* S.D. Fla. L.R. 7.1(c)(1) ("All materials in support of any motion, response, or reply, including affidavits and declarations, shall be served with the filing.").

For these reasons, the Court finds the Client's objection as to Magistrate Judge Becerra's decision not to consider certain evidence at the evidentiary hearing to be without merit.

### 6. The Client's Objection Based on Prejudgment Interest Is without Merit.

Lastly, the Client argues that Magistrate Judge Becerra erred in awarding prejudgment interest because the disputed funds have been held in escrow and the Fee Agreement does not provide for prejudgment interest on the amount held in escrow. Objs. at 21.

In response, the Law Firm argues that the Client has not provided any legal authority for the proposition that pre-judgment interest is improper in this case. Objs. Resp. at 21. To the contrary, the Law Firm points out that the "only two options available to stop accrual of interest on a judgment are (1) an unconditional tender for the full amount due, or (2) placing the funds due into the registry of the court." *Id.* (citing *Devolder v. Sandage*, 575 So. 2d 312, 313 (Fla. Dist. Ct. App. 1991)).

To begin, the Court notes that the Client has not cited to any legal authority for its argument that Magistrate Judge Becerra erred in awarding prejudgment interest. Objs. at 21. The Client merely argues that prejudgment interest should not be awarded because the funds are held in

escrow and the Fee Agreement does not provide for prejudgment interest.  Yet, the Client has not

cited to, nor is the Court aware of, any legal authority standing for the proposition that: (1) parties

need to agree to an award of prejudgment interest by contract, or (2) that holding funds in escrow

prevents an award of prejudgment interest.  The Law Firm, however, has provided the Court with

case law standing for the proposition that, under Florida law, a judgment debtor can only stop the

accrual of interest on a judgment by: (1) "mak[ing] an unconditional tender for the full amount

due on the judgment," or (2) placing the funds in the Court registry.  *Devolder*, 575 So. 2d at 313.

Neither of these conditions have been satisfied here.

For these reasons, the Court finds that the Client's objections as to Magistrate Judge

Becerra's award of prejudgment interest in this case to be without merit.

## IV.    CONCLUSION

Accordingly, UPON CONSIDERATION of the R&R, the pertinent portions of the record,

and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED

that:

1. Magistrate Judge Becerra's Report and Recommendation (ECF No. 100) is
   ADOPTED.

2. The Law Firm's Amended Motion to Enforce Charging Lien (ECF No. 67) is
   GRANTED IN PART AND DENIED IN PART.

3. The Law Firm is entitled to $1,012,469.99, which constitutes the full amount of
   the lien, minus $60,228.00, which is attributable to Mr. Levin's time.

4. The Law Firm is entitled to prejudgment interest from April 14, 2020.

5. The Law Firm is ORDERED to provide the Court with a calculation of
   prejudgment interest, consistent with the foregoing, for the Court's review.

6.   All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida this *29th* day of September, 2021.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record